**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NANA A. AMISSAH, | |
| Plaintiff, | Civil Action No. 1:25-cv-03916-JPO |
| v. | ORAL ARGUMENT REQUESTED |
| META PLATFORMS, INC., | |
| Defendant. | |

**DEFENDANT META PLATFORMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS PENDING ARBITRATION**

*On the Brief*:
Cameron A. Smith, Esq.
Nicholas H. De Baun, Esq.
David S. Ostern, Esq.

**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: casmith@seyfarth.com
Email: ndebaun@seyfarth.com
Email: dostern@seyfarth.com

*Attorneys for Defendant Meta Platforms, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................................... 2

     A.    Plaintiff Agreed to Arbitrate All Employment-Related Disputes Against
           Meta. ........................................................................................................................ 2

     B.    Plaintiff Files A Complaint With No Allegations of Sexual Harassment. ............. 3

LEGAL ARGUMENT .................................................................................................................. 4

I.     THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS
      AGAINST META. ................................................................................................................. 4

     A.    The Parties Entered Into a Valid and Enforceable Arbitration Agreement,
           and Therefore, the FAA and Supreme Court Authority Require the Court
           to Enforce It. ........................................................................................................... 5

     B.    The Mutual Arbitration Agreement Delegates to the Arbitrator All
           Questions Regarding Arbitrability. .......................................................................... 9

     C.    If This Court Chooses to Address Arbitrability, It Should Find That
           Plaintiff's Claims Are Arbitrable. ......................................................................... 12

          1.    Plaintiff's Claims Are Within the Scope of the Mutual Arbitration
                 Agreement. ................................................................................................. 12

II.    THE ENDING FORCED ARBITRATION ACT DOES NOT APPLY TO THIS
      CASE. ................................................................................................................................ 13

III.   DEFENDANT REQUESTS THIS CASE BE STAYED PENDING
      ARBITRATION. ................................................................................................................ 14

CONCLUSION ......................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006)........................................................................................5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)...........................................................................................9, 11

*Begonja v. Vornado Realty Trust*,
    159 F. Supp. 3d 402 (S.D.N.Y. 2016)........................................................................6

*Bethea v. City of New York*,
    No. 11-CV-2347, 2014 WL 2616897 (E.D.N.Y. June 12, 2014) ...........................13

*Beture v. Samsung Elecs. Am., Inc.*,
    No. 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018) ............................9

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
    776 F.3d 126 (2d Cir. 2015)........................................................................................6

*Coleman v. Sys. Dialing LLC*,
    No. 15cv3868 (DLC), 2016 WL 3387748 (S.D.N.Y. June 17, 2016) .....................6

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995)........................................................................................11

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005)..................................................................................9, 10

*Cornelius v. CVS Pharm., Inc.*,
    No. 23-01858, 2023 WL 6876925 (D.N.J. Oct. 18, 2023) .....................................14

*Cornelius v. Wells Fargo Bank, N.A.*,
    No. 19-CV-11043 (LJL), 2020 WL 1809324 (S.D.N.Y. Apr. 8, 2020) ...................5

*Daly v. Citigroup Inc.*,
    No. 16-cv-9183 (RJS), 2018 WL 741414 (S.D.N.Y. Feb. 6, 2018) ........................5

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)...................................................................................................5

*Doctor's Assocs., Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995)........................................................................................8

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ........................................................................................14

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ........................................................................................5

*Faith v. Khosrowshahi*,
    No. 21-CV-06913, 2023 WL 5278126 (E.D.N.Y. Aug. 16, 2023) ........................13

*First Options of Chicago Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................6

*Fiveco, Inc. v. Haber*,
    11 N.Y.3d 140 (2008) ..........................................................................................7

*Fort Miller Co. v. Am. Transport, Inc.*,
    No. 1:12-CV-681, 2013 WL 773108 (N.D.N.Y. Feb. 28, 2013) ............................8

*Friedman v. Burns*,
    46 N.Y.S.3d 853 (Sup. Ct. 2017) ........................................................................8

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004) ................................................................................7

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) ............................................................................................9

*Harrington v. Atl. Sounding Co.*,
    602 F.3d 113 (2d Cir. 2010) ................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ..........................................................................................9

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010) ............................................................................6

*Holick v. Cellular Sales of N.Y., LLC*,
    802 F.3d 391 (2d Cir. 2015) ................................................................................5

*Holiday v. Wells Fargo Bank, N.A.*,
    No. 4:23-CV-00418, 2024 WL 194199 (S.D. Iowa Jan. 10, 2024) ......................14

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................11

*Kolchins v. Evolution Markets, Inc.*,
    8 N.Y.S.3d 1 (1st Dep't 2015) ............................................................................6

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) ................................................................................................5

*Latif v. Morgan Stanley & Co. LLC*,
   No. 18CV11528 (DLC), 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...................6

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) .....................................................................................5

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986) ..............................................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ...............................................................................................5

*Osprey Partners, LLC v. Bank of New York Mellon Corp.*,
   982 N.Y.S.2d 119 (2014) .......................................................................................7

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) .................................................................................10

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012) ...................................................................................6

*Singh v. Meetup LLC*,
   750 F. Supp. 3d 250 (S.D.N.Y. 2024) ................................................1, 12, 13, 14

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ............................................................................................14

*Southside Hosp. v. New York State Nurses Ass'n*,
   732 F. App'x 53 (2d Cir. 2018) ...........................................................................10

*Vitrano v. N.A.R., Inc.*,
   No. 18-CV-06754 (KAM) (RLM), 2020 WL 1493620 (E.D.N.Y. Mar. 27,
   2020) ...................................................................................................................11

*Wells Fargo Advisors, LLC v. Sappington*,
   884 F.3d 392 (2d Cir. 2018) .................................................................................10

**Statutes**

9 U.S.C. § 2 ................................................................................................................5

9 U.S.C. § 3 ..............................................................................................................14

9 U.S.C. § 4 ............................................................................................................4, 5

9 U.S.C. § 401(3) ....................................................................................................13

9 U.S.C. § 402(a) ...................................................................................................................13

**Other Authorities**

Employment, AMERICAN ARBITRATION ASSOCIATION,
    https://www.adr.org/sites/default/files/Employment%20Rules.pdf ........................................10

FED. R. CIV. P. 12(b)(1)............................................................................................................2

FED. R. CIV. P. 12(b)(6)............................................................................................................2

22 N.Y. Jur.2d. Contract § 80 ..................................................................................................8

## PRELIMINARY STATEMENT

This lawsuit should be before an arbitrator, not this Court.  Throughout her employment, Plaintiff Nana Amissah ("Plaintiff") has been subject to a valid and binding arbitration agreement in which she agreed to arbitrate any claims or disputes arising out of or relating to her employment with Meta Platforms, Inc. ("Meta").  Plaintiff's arbitration agreement, which she knowingly and voluntarily entered into on April 24, 2017, remains binding today.  Thus, Plaintiff is obligated to arbitrate her claims against Meta.

Despite Plaintiff's knowledge of her obligation to arbitrate her claims, Plaintiff has ignored her contractual obligations and baselessly brought an action in this Court.  Plaintiff's Complaint, filed on May 9, 2025, asserts four causes of action: (1) unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) unlawful discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"); (3) unlawful discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"); and (4) unlawful interference and retaliation in violation of the Family Medical Leave Act ("FMLA") (ECF #1, Complaint ("Compl."), at ¶¶ 109-148).  Meta disputes and vehemently denies Plaintiff's allegations and believes that it will ultimately prevail on the merits of these claims.  However, there can be no dispute that each of these claims fall squarely within the scope of Plaintiff's arbitration agreement with Meta.

Moreover, any argument by Plaintiff that her claims are not subject to arbitration because she has pled sexual harassment should be rejected.  Aside from generic invocations of the phrase "hostile work environment" in the Complaint eight times, Plaintiff fails to allege that she was subjected to unwelcome verbal or physical harassment based on sex, as she must to trigger the protections of the Ending Forced Arbitration Act, 9 U.S.C. §§ 401-402 ("EFAA").  *See Singh v. Meetup LLC*, 750 F. Supp. 3d 250 (S.D.N.Y. 2024).

For these reasons and the reasons provided herein, Meta, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") and Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests that the Court grant its Motion to Compel Arbitration and stay the proceeding pending the arbitration of Plaintiff's claims.

## **FACTUAL BACKGROUND**

### **A.      Plaintiff Agreed to Arbitrate All Employment-Related Disputes Against Meta.**

On or about April 24, 2017, Plaintiff was hired to work for Meta.[1]   (Compl. at ¶ 17; Affirmation of Ashley Mayungbo ("Mayungbo Aff."), Exhibit ("Ex.") A, Meta Arbitration Agreement, at p. 5.)   Upon commencing her employment, Plaintiff signed Meta's Mutual Arbitration Agreement (the "Mutual Arbitration Agreement").   The Mutual Arbitration Agreement contains clear and conspicuous language governing Plaintiff's employment-related disputes with Meta.   (*See id.*)   The Mutual Arbitration Agreement explicitly states that Plaintiff and Meta "agree to arbitrate before a neutral arbitrator ***any and all*** existing or future disputes or claims . . . that arise out of or relate to . . . [Plaintiff's] recruitment, employment or separation from" Meta, including any "claims for discrimination, harassment or ***retaliation***, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under ***any and all*** federal, ***state, or municipal statutes***, regulations, ordinances or common law."   (*Id.* at 1) (emphasis added).   The Mutual Arbitration Agreement goes on to expressly state that "any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement."   (*Id.* at 2.)

---

[1] At the time of Plaintiff's hire, Meta was known as "Facebook, Inc."

Plaintiff's consent to the Mutual Arbitration Agreement was made in exchange for good and adequate consideration; namely, employment and a reciprocal agreement from Meta to arbitrate any claims the Company may likewise assert against her.  (*Id.* at 5.)

### B.    Plaintiff Files A Complaint With No Allegations of Sexual Harassment.

Despite agreeing to the terms of the Mutual Arbitration Agreement, Plaintiff filed her Complaint in this Court on May 9, 2025. Importantly, nowhere within her Complaint does Plaintiff allege that she was subjected to conduct that was so severe or pervasive that a reasonable person in her position would find the alleged environment to be abusive, intimidating, or hostile.  Even more broadly, Plaintiff makes no allegations of unwelcome sexual advances, requests for sexual favors, or other verbal or physical harassment of a sexual nature.  Instead, Plaintiff asserts claims (1) under Title VII for discrimination and retaliation on the basis of her race and gender, (2) under Section 1981 for discrimination and retaliation on the basis of her race; (3) under the ADA for discrimination and retaliation on the basis of a purported disability; and (4) under the FMLA for interference and retaliation.

In describing her alleged claims of gender-based discriminatory conduct, Plaintiff asserts that she "suffered . . . a hostile work environment."  (Compl. at p. 5.)  In support of this assertion, however, Plaintiff offers a laundry list of alleged discriminatory acts, none of which plausibly describe sexual harassment.  Instead, she asserts various forms of disparate treatment based on her race, alleging that her managers discriminated against her by "denying critical resources, creating inconsistent expectations, and failing to support Plaintiff's team" (Compl. at ¶ 29); treating Plaintiff differently with "respect to budget allocation and budget transparency" (Compl. at ¶ 32); refusing to "provide Plaintiff with clarity regarding her team's budget and subject[ing] her team's budget to heightened scrutiny" (Compl. at ¶ 33); "refusing to provide Plaintiff with clear expectations" and "rearranging Plaintiff's work priorities" (Compl. at ¶ 34); ignoring Plaintiff's

contributions at meetings (Compl. at ¶ 37); failing to inform Plaintiff of layoffs on her team (Compl. at ¶ 41); falsely accusing Plaintiff of being "unavailable" (Compl. ¶ 45); excluding Plaintiff from key meetings and failing to introduce her to senior leaders (Compl. at ¶¶ 63-65); delivering a negative performance evaluation to Plaintiff (Compl. at ¶ 76); impeding Plaintiff's efforts to transfer to other internal roles (Compl. at ¶ 83); and accusing Plaintiff of neglecting her duties. (Compl. at ¶ 84.) Significantly, Plaintiff relates all of these allegations solely to her race, medical conditions, and decisions to take medical leave, and not to her gender. (*See* Compl. ¶¶ at 27-108.) Even more significantly, nowhere does Plaintiff allege that she experienced quid pro quo sexual harassment, or that she was subjected to verbal or physical harassment of any kind, much less harassment of a sexual nature.

Therefore, in violation of her contractual obligation to arbitrate her claims, Plaintiff filed this action.

## LEGAL ARGUMENT

Plaintiff's Mutual Arbitration Agreement is valid and must be enforced pursuant to the FAA and relevant case law. The parties (1) voluntarily and knowingly entered into a valid and enforceable arbitration agreement and (2) Plaintiff's allegations fall directly within the scope of the parties' Mutual Arbitration Agreement. Additionally, the EFAA does not apply to this case because merely invoking the phrase "hostile work environment" without any connection to sex or gender in the Complaint does nothing to change the substance of Plaintiff's allegations. Thus, the Court should enter an order compelling arbitration and staying the case.

## I.    THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST META.

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] . . .

district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  It is well settled that "[a] court ruling on a petition to compel arbitration generally must decide two issues: (1) whether the parties agreed to arbitrate, and (2) if so, whether the scope of the agreement encompasses the claims at issue."  *Cornelius v. Wells Fargo Bank, N.A.*, No. 19-CV-11043 (LJL), 2020 WL 1809324, at *3 (S.D.N.Y. Apr. 8, 2020) (citing *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)).

>    **A.    The Parties Entered Into a Valid and Enforceable Arbitration Agreement, and Therefore, the FAA and Supreme Court Authority Require the Court to Enforce It.**

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  The FAA and the strong federal policy favoring arbitration require courts to "rigorously enforce agreements to arbitrate."  *Mitsubishi Motors Corp.*, 473 U.S. at 625-26 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  The United States Supreme Court has reinforced this  principle by stating that "Congress has instructed that arbitration agreements . . . must be enforced as written."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  Both the Second Circuit and the Southern District of New York have observed that "'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.'"  *Daly v. Citigroup Inc.*, No. 16-cv-9183 (RJS), 2018 WL 741414, at *6 (S.D.N.Y. Feb. 6, 2018) (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).

The FAA also contains the framework that federal courts must use to decide arbitrability. As stated by the Second Circuit: "In addition to manifesting a policy strongly favoring arbitration when contracted for by parties to a dispute, the FAA establishes a body of federal substantive law of arbitrability and also supplies a procedural framework applicable in federal courts." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129-30 (2d Cir. 2015) (quotations and citations omitted). As such, this Court should follow the framework provided.

The FAA does not place a high burden upon the party moving to compel arbitration. Rather, the movant need only make a *prima facie* showing that an agreement to arbitrate exists. Subsequently, the burden shifts to the party opposing arbitration to show that the arbitration agreement is either inapplicable or invalid.   *See Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)); *see also Latif v. Morgan Stanley & Co. LLC*, No. 18CV11528 (DLC), 2019 WL 2610985, at *2 (S.D.N.Y. June 26, 2019) (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)) (alteration in original) ("[A] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.").

Here, a valid and enforceable arbitration agreement exists between Plaintiff and Meta.  The validity of the Mutual Arbitration Agreement is governed by and construed in accordance with the contract laws of the State of New York.[2]  (Mayungbo Aff., Ex. A at 3.)  "Under New York law, the formation of a contract requires five elements: 'offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.'"  *Coleman v. Sys. Dialing LLC*, No. 15cv3868 (DLC),

---

[2] Although the FAA governs, state law applies to the determination of whether a valid agreement was entered into. *See First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding courts "should apply ordinary state-law principles that govern the formation of contracts" when determining enforceability of an arbitration agreement); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law.").

2016 WL 3387748, at *3 (S.D.N.Y. June 17, 2016) (citing *Kolchins v. Evolution Markets, Inc.*, 8 N.Y.S.3d 1, 9 (1st Dep't 2015)).  The parties' Mutual Arbitration Agreement fully satisfies these elements.

Indeed, there can be no dispute that Plaintiff and Meta entered into a mutually binding agreement to, *inter alia*, arbitrate any employment-related disputes that might arise between them. The Mutual Arbitration Agreement offered to and accepted by Plaintiff states:

> Employer and Employee agree to arbitrate before a neutral arbitrator any and all existing or future disputes or claims between Employee and Employer, that arise out of or relate to Employee's recruitment, employment or separation from employment with Employer . . . whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized.

(Mayungbo Aff., Ex. A, at 1.)  And, the unambiguous terms of the Mutual Arbitration Agreement confirm Plaintiff's intent to arbitrate such disputes.  *See Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008) ("[A]n arbitration clause in a written agreement is enforceable . . . when it is evident that the parties intended to be bound by the contract.") (internal quotations omitted); *Osprey Partners, LLC v. Bank of New York Mellon Corp.*, 982 N.Y.S.2d 119, 120 (2014) ("[W]here the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the document.").

Further, general contract principles provide that, in the absence of fraud, a party who signs a written contract is conclusively presumed to know and assent to its contents.  *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (enforcing arbitration agreement and noting it was plaintiff-employee's responsibility to ensure he understood the signed agreement).

Here, there is no dispute that Plaintiff signed the Mutual Arbitration Agreement on April 4, 2017.  (Mayungbo Aff., Ex. A, at p. 5.)

And, as further evidence of the parties' mutual assent and intent to be bound, the following text immediately precedes Plaintiff's signature on the Mutual Arbitration Agreement: "WE AGREE THAT WE HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND THAT BY SIGNING IT, WE ARE WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR JURY OF ANY AND ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT." (*Id.*) (emphasis in original). *See Fort Miller Co. v. Am. Transport, Inc.*, No. 1:12-CV-681 (FJS/RFT), 2013 WL 773108, at *6-7 (N.D.N.Y. Feb. 28, 2013) (finding mutual assent where both parties signed the agreement, and the agreement "clearly set[] forth" both parties' responsibilities).

Finally, in exchange for her agreement to arbitrate any employment-related claims against Meta, Plaintiff received good and sufficient consideration. Specifically, Plaintiff received a mutually binding promise from Meta to arbitrate all disputes the Company may have against her. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452-53 (2d Cir. 1995) ("[M]utual promises to arbitrate could constitute sufficient consideration to support an arbitration agreement."); *Friedman v. Burns*, 46 N.Y.S.3d 853, 859 (Sup. Ct. 2017) ("'Since a promise is a good consideration for a promise, mutual promises are generally held to be sufficient consideration for each other. Mutual promises on the part of both parties to a contract constitute sufficient consideration for the agreement, where each party undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promise.'") (citing 22 N.Y. Jur.2d. Contract § 80).

Because Plaintiff entered into a valid and enforceable arbitration agreement with Meta governing the claims at issue in this action, the Court should dismiss the claims against Meta and compel arbitration. As set forth below, the Court need not conduct any further analysis because

the subsequent issue, *i.e.* whether Plaintiff's specific claims are within the scope of the Mutual Arbitration Agreement and subject to arbitration, are reserved for the arbitrator pursuant to the terms of the Mutual Arbitration Agreement.

      **B.**    **The Mutual Arbitration Agreement Delegates to the Arbitrator All Questions Regarding Arbitrability.**

The United States Supreme Court has held that parties may reserve the question of arbitrability for an arbitrator when the parties "clearly and unmistakably provide" that the arbitrator will decide arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Beture v. Samsung Elecs. Am., Inc.*, No. 17-5757 (SRC), 2018 WL 4621586, at *10 (D.N.J. July 18, 2018). The Court has even strengthened this long-standing rule by making clear that when parties delegate gateway questions to an arbitrator, a court *must* send the question of arbitrability to an arbitrator, even if a court believes that the argument that the dispute is subject to arbitration is "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

Two independently valid legal bases show that Plaintiff and Meta clearly and unmistakably delegated the question of arbitrability to the arbitrator. They did so, first, by incorporating a set of arbitration rules which confirm the arbitrator will have the sole power to rule on arbitrability. Federal courts, including the Second Circuit, routinely recognize that parties may, by incorporating a set of arbitration rules, agree that the arbitrator will have the sole power to rule on arbitrability. For example, in *Contec Corp. v. Remote Sol., Co.*, the Second Circuit held that "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see*

*also Southside Hosp. v. New York State Nurses Ass'n*, 732 F. App'x 53, 55 (2d Cir. 2018) (citing *Contec* for same).

Meta and Plaintiff incorporated into the Mutual Arbitration Agreement the American Arbitration Association (the "AAA") Rules by including the following language:

> We understand and agree that the arbitration shall be conducted in accordance with the Employment Arbitration Rules and Mediation Procedure of the American Arbitration Association ("AAA"), including its Optional Rules for Emergency Measures of Protection, to the extent not inconsistent with the terms of this agreement.

(Mayungbo Aff., Ex. A, at 2.)  The incorporated AAA Rules clearly state the arbitrator will decide any issues of arbitrability.  Specifically, AAA Rule 7(c) states in pertinent part: "[If a] party . . . object[s] to the jurisdiction of the arbitrator or to the arbitrability of a claim . . . , [t]he arbitrator may rule on such objections as a preliminary matter or as part of the final award." Employment, AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf (last visited May 27, 2025) (emphasis added) (attached as Ex. A to the Affirmation of Nicholas H. De Baun, Esq.) Because the Mutual Arbitration Agreement incorporates these rules, the Court should recognize the arbitrator's sole authority to decide all issues of arbitrability.

Second, by using broad language to describe the scope of the covered claims, the Mutual Arbitration Agreement provides another basis for delegating issues of arbitrability to the arbitrator. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396 (2d Cir. 2018) (a clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise . . . concerning matters related to or arising from your employment," "demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (a contractual provision that "any and all controversies . . . shall

be determined by arbitration" and that "[t]he parties are waiving their right to seek remedies in court" was found to "evidence the parties' intent to arbitrate all issues, including arbitrability").

The parties' Mutual Arbitration Agreement states, in relevant part:

> Employer and Employee agree to arbitrate before a neutral arbitrator ***any and all existing or future disputes or claims*** between Employee and Employer . . . whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized.

(Mayungbo Aff., Ex. A, at 1) (emphasis added).  The phrasing used here—including "any and all existing or future disputes or claims"—is exactly the type of language that courts recognize as a "broad clause."  (*Id.*)  *See*, *e.g.*, *Vitrano v. N.A.R., Inc.*, No. 18-CV-06754 (KAM) (RLM), 2020 WL 1493620, *5 (E.D.N.Y. Mar. 27, 2020) ("[T]he Second Circuit has consistently held that arbitration provisions applicable to 'any claim' or 'any dispute' should be considered 'broad'") (collecting cases); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (invocation of "any dispute" in the Agreement "is the paradigm of a broad clause"); *AT&T Tech.*, 475 U.S. at 650 (characterizing as "broad" an arbitration clause employing the term "any").  This broad language demonstrates the clear and unmistakable intent of the parties to arbitrate all questions of arbitrability.[3]

---

[3] In contrast, the Mutual Arbitration Agreement specifically excludes a list of claims from the scope of the parties' agreement, none of which are relevant here, including, workers' compensation benefits, unemployment insurance, claims for temporary or preliminary injunctive relief, claims relating to Plaintiff's or Meta's intellectual property, and other disputes excluded from arbitration by statute.  (Mayungbo Aff., Ex. A, at 1). The Mutual Arbitration Agreement's specific language distinguishing the treatment of these claims plainly confirms that all other issues relating to the Mutual Arbitration Agreement are to be addressed by an arbitrator.  *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (finding that the inclusion of a carve out "does not negate a finding of clear and unmistakable delegation to the arbitrator to decide whether the parties entered a valid arbitration agreement and whether the present dispute falls within the scope of the arbitration agreement.").

**C.      If This Court Chooses to Address Arbitrability, It Should Find That Plaintiff's Claims Are Arbitrable.**

While Meta maintains that the Mutual Arbitration Agreement reserves determinations of arbitrability for the arbitrator, even if this Court determines otherwise and addresses arbitrability, it must find that Plaintiff's claims are within the scope of the Mutual Arbitration Agreement.

**1.      Plaintiff's Claims Are Within the Scope of the Mutual Arbitration Agreement.**

Plaintiff's claims fall squarely within the scope of the executed Mutual Arbitration Agreement. Indeed, Meta and Plaintiff expressly agreed to submit "any and all existing or future disputes or claims" between them, including any claims "that arise out of or relate to" Plaintiff's "employment or separation from employment" with Meta. (Mayungbo Aff., Ex. A, at 1.) The Mutual Arbitration Agreement also *specifically* includes *every claim that Plaintiff is alleging in this matter*, stating:

> **[A]ny and all exiting or future disputes or claims** between Employee and Employer, that arise out of or relate to Employee's recruitment, employment or separation from employment with Employer . . ., including, but not limited to, the following claims ("Covered Claims"): . . . claims for **discrimination**, harassment or **retaliation**, whether on the basis of age, sex, **race**, national origin, religion, **disability** or any other unlawful basis, under any and all federal, state, or municipal statutes, regulations, ordinances or common law.

(*Id.* at 1) (emphasis added).

Because this provision explicitly references each and every one of Plaintiff's claims against Meta, there can be no doubt that such claims fall within the scope of the Mutual Arbitration Agreement. (*See* Compl. at ¶¶ 109-148) (asserting disability, discrimination, retaliation, and interference claims under federal law); *see also Meetup LLC*, 750 F. Supp. 3d 250 (S.D.N.Y. 2024) (parallel claims under the NYSHRL and NYCHRL subject to arbitration under a mandatory arbitration agreement). As such, the Court should compel Plaintiff to arbitrate her claims against Meta.

## II.    THE ENDING FORCED ARBITRATION ACT DOES NOT APPLY TO THIS CASE.

Plaintiff's claims are subject to mandatory arbitration and the EFAA does not apply to this case.

Put simply, Plaintiff does not allege she was sexually harassed in violation of federal, state, or municipal law.  By its own terms, the EFAA applies only to claims that relate to a "sexual assault dispute or . . . [a] sexual harassment dispute."  9 U.S.C. § 402(a).  A "sexual assault dispute," which is undisputedly inapplicable to this case, is defined as a "dispute involving a nonconsensual sexual act or sexual contact."  9 U.S.C. § 401(3).  There are no allegations in the Complaint regarding such conduct.

Under long-standing and familiar law, sexual harassment claims are broken down into two categories: quid pro quo sexual harassment and hostile work environment.  *See Bethea v. City of New York*, No. 11-CV-2347, 2014 WL 2616897, at *5 (E.D.N.Y. June 12, 2014); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).  There are no allegations of quid pro quo sexual harassment in the Complaint.  Therefore, Plaintiff may only avail herself of the protections of the EFAA if the Complaint plausibly alleges that she was subjected to a hostile working environment.

Plaintiff alleges no facts that would support a hostile work environment claim. Aside from invoking the phrase "hostile work environment" in the Complaint eight times (*see* Compl. at ¶¶ 29, 56, 81, 91, 94, 97), there is not a single allegation of "unwelcome verbal or physical behavior" based on Plaintiff's gender.  *Meetup LLC*, 750 F. Supp. 3d at 258 (S.D.N.Y. 2024) (internal quotation and citation omitted) (making clear that not all gender discrimination constitutes sexual harassment).  Further, simply stating the phrase, "hostile work environment" is not enough under the EFAA: "such conclusory labels are not dispositive—and do not alter the facts alleged."  *See id.  See also Faith v. Khosrowshahi,* No. 21-CV-06913, 2023 WL 5278126, at *7 n.5 (E.D.N.Y.

Aug. 16, 2023) (granting motion to compel where "Plaintiff allege[d] employment discrimination by Defendants in violation of Title VII and the NYSHRL—not a sexual harassment dispute or sexual assault dispute that would trigger the EFAA's provisions") (internal quotations omitted); *Cornelius v. CVS Pharm., Inc.*, No. 23-01858, 2023 WL 6876925, at *4 (D.N.J. Oct. 18, 2023) (declining to apply the EFAA where plaintiff "specifically alleges gender discrimination claims"); *Holiday v. Wells Fargo Bank, N.A.*, No. 4:23-CV-00418, 2024 WL 194199, at *5 (S.D. Iowa Jan. 10, 2024) (a claim of unequal pay and different treatment based on gender "might constitute sex discrimination, but it would not constitute sexual harassment. The EFAA therefore does not apply") (emphasis in original.)

Therefore, any attempt by Plaintiff to use the EFAA as cover to avoid having her claims sent to arbitration should be rejected.

## III.    DEFENDANT REQUESTS THIS CASE BE STAYED PENDING ARBITRATION.

This action should be stayed pending the resolution of the arbitration proceeding. It is well established that "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referrable to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. § 3); *see also Meetup LLC*, 750 F. Supp. 3d at 260 (discussing how a mandatory stay is consistent with the FAA); *see generally Smith v. Spizzirri*, 601 U.S. 472 (2024).

In this case, aside from Defendant seeking an order compelling Plaintiff to litigate her claims in arbitration pursuant to the Mutual Arbitration Agreement, Defendant also requests the Court stay the proceeding. *See Spizzirri*, 02 U.S. at 477 (emphasis added) (the "FAA's structure and purpose confirm that a stay is *required*.").

## CONCLUSION

For the reasons set forth above, Meta respectfully requests the Court enter an order compelling Plaintiff to pursue her claims in arbitration and staying the proceeding pending arbitration, together with such other and further relief as the Court deems just and proper.

Dated:    July 14, 2025

Respectfully submitted,

**SEYFARTH SHAW LLP**

*/s/ Nicholas H. De Baun*

Cameron A. Smith, Esq.
Nicholas H. De Baun, Esq.
David S. Ostern, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: casmith@seyfarth.com
Email: ndebaun@seyfarth.com
Email: dostern@seyfarth.com

*Attorneys for Defendant Meta Platforms, Inc.*

317787582v.10

15